**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | | |
|---|---|---|---|
| JAVO BEVERAGE COMPANY, INC., | ) | | |
| | ) | | |
| Plaintiff, | ) | C.A. No. 22-547-RGA | |
| v. | ) | | |
| | ) | **JURY TRIAL DEMANDED** | |
| JAVY COFFEE COMPANY and JAVY | ) | | |
| COFFEE LLC, | ) | | |
| | ) | | |
| Defendants. | ) | | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT
OF ITS MOTION TO DISMISS FOR FAILURE TO STATE
A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6) AND FED. R. CIV. P. 8(a)**

i

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I. STATEMENT OF THE NATURE AND STATE OF PROCEEDINGS.................................. 1

II. SUMMARY OF ARGUMENT ........................................................................................ 1

III. CONCISE STATEMENT OF FACTS ............................................................................. 2

IV. ARGUMENT ................................................................................................................ 3

A. Counts I-V Should Be Dismissed Pursuant to Rule 12(b)(6) Because Plaintiff Failed to Plausibly Allege the Existence of the Likelihood of Confusion.............. 5

1. Strength of Plaintiff's Mark ...................................................................... 7

2. Similarity of the Marks ............................................................................ 10

3. Absence of Actual Confusion ................................................................. 13

4. Defendants' Intent.................................................................................... 16

B. Count III Warrants Dismissal Because It Impermissibly Combines Two Discrete Legal Claims Into a Single Count........................................................................ 17

C. Under Rule 12(b)(6), Plaintiff Failed to State a Claim for Unjust Enrichment (Count IV)............................................................................................................ 18

V. CONCLUSION ............................................................................................................ 20

40157619.4

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
   237 F.3d 198 (3d Cir. 2000).................................................................5-6, 8-9, 14, 16

*Accu Personnel, Inc. v. Accustaff, Inc.*,
   823 F. Supp. 1161 (D. Del. 1993).................................................................10

*Adger v. Carney*,
   2020 WL 1475422 (D. Del. Mar. 26, 2020) .................................................17

*Am. Cyanamid Corp. v. Connaught Labs., Inc.*,
   800 F.2d 306 (2d Cir. 1986).................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................3

*Astrazeneca AB v. Dr. Reddy's Labs., Inc.*,
   209 F. Supp. 3d 744 (D. Del. 2016).................................................................4

*Ava Enterprises Inc. v. P.A.C. Trading Group, Inc.*,
   86 U.S.P.Q.2d 1659, 2008 WL 754201 (T.T.A.B. 2008) .................................................12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................3-4, 7, 13

*Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*,
   333 F. Supp. 2d 239 (D. Del. 2004).................................................................8

*Checkpoint Sys. v. Check Point Software Techs., Inc.*,
   269 F.3d 270 (3d Cir. 2001).................................................................7

*Connelly v. Lane Constr. Corp.*,
   809 F.3d 780 (3d Cir. 2016).................................................................4

*Country Floors, Inc. v. Partnership Composed of Gepner and Ford*,
   930 F.2d 1056 (3d Cir. 1991).................................................................11

*Cutter Labs., Inc. v. Air Prods. & Chems., Inc.*,
   189 U.S.P.Q. 108 (T.T.A.B. 1975) .................................................................11

*Digene Corp. v. Ventana Med. Sys.*,
   476 F. Supp. 2d 444 (D. Del. 2007) .................................................................17

40157619.4

*Everett Labs. v. Vertical Pharms.*,
   227 Fed. Appx. 124 (3d Cir. 2007) ...................................................................................11

*Fisons Horticulture, Inc. v. Vigoro Indus.*,
   30 F.3d 466 (3d Cir. 1994) ..............................................................................................7

*Giant Food, Inc. v. Nation's Foodservice, Inc.*,
   710 F.2d 1565 (Fed. Cir. 1983) ......................................................................................12

*GOLO, LLC v. Goli Nutrition Inc.*,
   C.A. No. 20-667-RGA, 2020 WL 5203601 (D. Del. Sept. 1, 2020).........................6, 10, 16

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*,
   921 F.3d 1343 (11th Cir. 2019) ......................................................................................13

*Hydrogen Master Rights, Ltd. v. Weston*,
   228 F. Supp. 3d 320 (D. Del. 2017).................................................................................19

*Le Book Publ'g, Inc. v. Black Book Photography, Inc.*,
   418 F. Supp. 2d 305 (S.D.N.Y. 2005)..........................................................................4, 15

*Lula v. Network Appliance, Inc.*,
   2006 WL 8457121 (W.D. Pa. Aug. 29, 2006) ..................................................................17

*Military Certified Residential Specialist, LLC v. Fairway Indep. Mortg. Corp.*,
   251 F. Supp. 3d 750 (D. Del. 2017)...................................................................................5

*Murray v. Cable Nat. Broadcasting Co.*,
   86 F.3d 858 (9th Cir. 1996) .........................................................................................4, 12

*Nabisco, Inc. v. Warner-Lambert Co.*,
   220 F.3d 43 (2d Cir. 2000)................................................................................................5

*Network Managing Sols., LLC v. AT&T Inc.*,
   2017 WL 5195863 (D. Del. Nov. 9, 2017) .........................................................................4

*Noblr, Inc. v. Nobl Ins. LLC*,
   2020 WL 1441615 (D. Del. Mar. 24, 2020) .....................................................................13

*Passport Health, LLC v. Avance Health Sys.*,
   823 Fed. Appx. 141 (4th Cir. 2020).................................................................................15

*Polaroid Corp. v. Oculens, Ltd.*,
   196 U.S.P.Q. 836 (T.T.A.B. 1977) ..................................................................................11

*Roberts v. Gordy*,
   2015 WL 12911328 (S.D. Fla. Sept. 15, 2015) ..................................................................9

iii

*Sabinsa Corp. v. Creative Compounds, LLC,*
  609 F.3d 175 (3d Cir. 2010)................................................................6

*Sanofi-Aventis v. Advancis Pharm. Corp.,*
  453 F. Supp. 2d 834 (D. Del. 2006).....................................................8

*Spark Therapeutics, Inc. v. Bluebird Bio, Inc.,*
  2022 WL 605724 (D. Del. Jan. 25, 2022)...................................14, 16

*Steve's Ice Cream v. Steve's Famous Hot Dogs,*
  3 U.S.P.Q.2D (BNA) 1477, 1479 (T.T.A.B. 1987) ............................9

*Sun Banks of Florida, Inc. v. Sun Federal Savings & Loan Association,*
  651 F.2d 311 (5th Cir. 1981) ..............................................................9

*Talley v. Harper,*
  2017 WL 413069 (W.D. Pa. Jan. 31, 2017).......................................18

*Tektronix, Inc. v. Daktronics, Inc.,*
  187 U.S.P.Q. 588 (T.T.A.B. 1975) ....................................................11

*Trevino v. Merscorp, Inc.,*
  583 F. Supp. 2d 521 (D. Del. 2008)...................................................18

*Triumph Hosiery Mills, Inc. v. Triumph Int'l Corp.,*
  308 F.2d 196 (2d Cir. 1962)................................................................9

*Welding Servs., Inc. v. Forman,*
  509 F.3d 1351 (11th Cir. 2007) .........................................................15

*Zaletel v. Prisma Labs, Inc.,*
  C.A. No. 16-1307, 2017 WL 877302 (D. Del. Mar. 6, 2017)............14

**Statutes & Constitutions**

15 U.S.C. § 1125.....................................................................................5

15 U.S.C. § 1114.....................................................................................5

6 Del. C § 2532 ......................................................................................5

**Treatises**

6 McCarthy on Trademarks and Unfair Competition § 32:121.75 (5th ed.) ..................................4

40157619.4

## I.  STATEMENT OF THE NATURE AND STATE OF PROCEEDINGS

At its core, this proceeding revolves around the trademark-related rights of the respective parties and whether Defendants' federally registered JAVY COFFEE mark is confusingly similar to, and infringes on, Plaintiff's JAVO mark (and related design marks). The case is still in the nascent stages, as the Complaint was filed on or around April 27, 2022 (D.I. 1). In lieu of an answer, Defendants move to dismiss all counts for failure to state a claim pursuant to Rule 12(b)(6) and Rule 8(a) of the Federal Rules of Civil Procedure.

## II.  SUMMARY OF ARGUMENT

1.      The instant action presents the culmination of Plaintiff's continued efforts to unfairly, and without any viable basis in law or fact, drive a legitimate competitor out of the market.

2.      Because Plaintiff failed to plausibly allege likelihood of confusion, dismissal of Counts I-V (all claims requiring a showing of likelihood of confusion) is warranted.  As a matter of law, no plausible claim of trademark infringement can be made because said key element was not plausibly pled.  As a matter of law, consumers would not be confused between the Parties' respective marks because, out of the ten *Lapp* factors, nine heavily weigh against Plaintiff. The only factor that arguably weighs in Plaintiff's favor is the similarity of the Parties' goods. But Plaintiff cannot reasonably claim that each and every entity that sells coffee-related goods and/or services in the market does so in violation of Plaintiff's purported trademark rights. Further, the fact that each of the marks share the initial JAV- prefix is also legally insufficient to state a plausible claim for infringement given that there are hundreds of live Federal trademark registrations for JAV- formative marks. Plaintiff likewise cannot claim that it has protection against each of these marks as Plaintiff's marks are conceptually and commercially weak, such

40157619.4

that they are entitled to a narrow and limited scope of protection. Accordingly, all but one of the *Lapp* factors weigh against a likelihood of confusion.

      3.     Dismissal of Count III (common law trademark infringement and common law unfair competition) is warranted as it improperly combines two separate and discrete legal claims in violation of Rule 8(a). In the alternative, Count III must be dismissed because it constitutes an improper "shotgun" pleading that fails to fairly apprise Defendants of the factual grounds upon which each of these separate claims rests.

      4.     Plaintiff failed to sufficiently pled Count VI (unjust enrichment) because the Complaint (i) avers several elements generally and in conclusory fashion, and (ii) wholly fails to aver the remaining elements. As such, Count VI warrants dismissal pursuant to Rule 12(b)(6).

## III.  CONCISE STATEMENT OF FACTS

The Parties are direct competitors in the market insofar as they both market, offer for sale, and sell coffee and coffee-based beverages to desirous customers.  D.I. 1 ¶¶ 12, 36.  Plaintiff purportedly markets, offers for sale, and sells its goods under the following JAVO standard character and design marks ("Plaintiff's Marks"), which are embodied in corresponding federal trademark application(s) and registration(s) identified in the Complaint:





*Id.* ¶ 12.  Defendants market, offer for sale, and sell their competing goods under the following design mark ("the Accused Mark"), which is embodied in U.S. Registration No. 6,514,951 ("the '951 Registration") and registered on the Principal Register:

**Javy**
coffee

*Id.* ¶ 36.  The Accused Mark was registered on October 12, 2021.  *Id.*  Plaintiff knew of Defendants'

use of the Accused Mark since at least February 2022, through a cease-and-desist letter sent by

Plaintiff.[1]  *See id.* ¶¶ 40-41.  No actual confusion was alleged in the Complaint regarding

Defendant's long use of the Javy mark.  *See id.*  Plaintiff instituted this action on or around April

27, 2022, asserting claims of (1) federal trademark infringement; (2) federal unfair competition;

(3) common law trademark infringement and unfair competition; (4) unfair competition under

Delaware's Deceptive Trade Practices Act; (5) cancellation of the '951 Registration; and (6) unjust

enrichment. *Id.* ¶¶ 43-96.

## IV.  ARGUMENT

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule

10 states, in part, that "[i]f doing so would promote clarity, each claim founded on a separate

transaction or occurrence . . . must be stated in a separate count or defense."  Fed. R. Civ. P. 10(b).

At the pleading stage, a complaint should be dismissed if it fails to "state a claim upon which relief

can be granted."  Fed. R. Civ. P. 12(b)(6).  This standard requires "enough facts to state a claim

for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  A complaint must provide "more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555;

---

[1] Indeed, discovery will reveal that Plaintiff had actual knowledge of the Accused Mark going as
far back as October of 2020.

40157619.4

see Iqbal, 556 U.S. at 678 (explaining that Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

When reviewing a motion under Rule 12(b)(6), a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-91 (3d Cir. 2016).  However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678.  A court considering a motion to dismiss pursuant to Rule 12(b)(6) is limited to the facts contained in the complaint and the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Astrazeneca AB v. Dr. Reddy's Labs., Inc*., 209 F. Supp. 3d 744, 752 (D. Del. 2016). Pursuant to Fed. R. Evid. 201(b), however, a court may consider and take judicial notice of public records, such as USPTO records, when considering a motion to dismiss. *See Network Managing Sols., LLC v. AT&T Inc.*, 2017 WL 5195863, *1, *7 (D. Del. Nov. 9, 2017) ("Public records are one type of document that courts can judicially notice.").

In the context of a trademark infringement claim, dismissal is warranted when the allegations of a likelihood of confusion are implausible in view of the facts alleged. *See* 6 McCarthy on Trademarks and Unfair Competition § 32:121.75 (5th ed.). For example, where the two marks are so different that even on the face of the complaint, there is no believable scenario under which confusion would be likely to occur. *See, e.g.*, *Murray v. Cable Nat. Broadcasting Co.*, 86 F.3d 858, 859 (9th Cir. 1996) (affirming a Rule 12(b)(6) dismissal because no likelihood of confusion was possible between plaintiff's AMERICA SPEAKS for man-on-the-street video surveys for television commercials of business clients and defendant's AMERICA'S TALKING for talk show programming for cable television); *Le Book Publ'g, Inc. v. Black Book Photography,*

*Inc.*, 418 F. Supp. 2d 305, 307, 311 (S.D.N.Y. 2005) (motion for dismissal for failure to state a claim was granted where the accused mark THE BLACK BOOK utilized in connection with books having a directory for professionals was not likely to cause confusion with the registered mark, LE BOOK NY for books having a directory for professionals) (citing to *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43 (2d Cir. 2000)). The test of infringement is a likelihood of confusion, which means that confusion must be probable, not just possible. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 216 (3d Cir. 2000) ("'Likelihood of confusion has been said to be synonymous with "probable" confusion - it is not sufficient if confusion is merely possible.'").

### A.    Counts I-V Should Be Dismissed Pursuant to Rule 12(b)(6) Because Plaintiff Failed to Plausibly Allege the Existence of the Likelihood of Confusion.

Taking the well-pled allegations of the Complaint as true, Plaintiff' still failed to plausibly allege that consumers would be confused between Plaintiff's JAVO marks and Defendants' JAVY COFFEE mark. Stated differently, while the goods between the Plaintiff and Defendants overlap, the marks at issue are significantly different, such that the Complaint fails to allege a plausible claim that confusion would be probable.  *See A & H Sportswear, Inc.*, 237 F.3d at 216.

In Counts I-IV, Plaintiff failed to articulate sufficient facts to demonstrate a likelihood of confusion that is plausible on its face. *See* 15 U.S.C. §§ 1125(a), 1114(1)(a); 6 Del. C § 2532; *Military Certified Residential Specialist, LLC v. Fairway Indep. Mortg. Corp.*, 251 F. Supp. 3d 750, 758 (D. Del. 2017).  Under § 32(a) of the Lanham Act, liability for trademark infringement requires a showing that the accused party "use[d] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" which "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Cancellation of the '951 Registration (Count V)

is also premised on the purported likelihood of confusion between Plaintiff's Marks and the Accused Mark.  D.I. 1 ¶ 91.

The Court applies the following ten *Lapp* factors in assessing whether a likelihood of consumer confusion exists: (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of similarity of functions; and (10) other factors suggesting the consuming public might expect the prior owner to manufacture a product in the defendant's market or that he is likely to expand into that market.[2] *See GOLO, LLC v. Goli Nutrition Inc.*, C.A. No. 20-667-RGA, 2020 WL 5203601, *1 (D. Del. Sept. 1, 2020). "The single most important factor in determining likelihood of confusion is mark similarity." *A & H Sportswear, Inc.*, 237 F.3d at 216. Together, mark similarity and mark strength comprise the two most important *Lapp* factors. *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 189 (3d Cir. 2010).

---

[2] The Complaint does not reference or discuss the following *Lapp* factors: (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of similarity of functions; or (10) other factors suggesting the consuming public might expect the prior owner to manufacture a product in the defendant's market or that he is likely to expand into that market.

### 1.      *Strength of Plaintiff's Mark*

Absent from the Complaint are well-plead factual allegations from which the Court could discern some measure of strength in the allegedly infringed mark. The strength of a mark is two-fold, consisting of both its conceptual strength, i.e., its placement on the spectrum of marks, and its commercial strength, i.e., the marketplace's recognition value of the mark. *Id.* at 184-85. The first prong of this test looks to the inherent features of the mark; the second looks to factual evidence of the mark's commercial strength or marketplace recognition. *Id.* Focusing solely on one type of strength is an incomplete method of analysis. *Id.* The Court must look to factual allegations within the Complaint from which it could plausibly deduce that Plaintiff's JAVO Mark is strong.

With respect to the first prong, the conceptual strength of a mark is characterized by placing the mark into one of the following four categories: (1) arbitrary or fanciful marks use terms that neither describe nor suggest anything about the product and "bear no logical or suggestive relation to the actual characteristics of the goods;" (2) suggestive marks require consumer "imagination, thought or perception" to determine what the product is; (3) descriptive terms that convey an immediate idea of the ingredients, qualities or characteristics of the goods; and (4) generic marks that function as the common descriptive name of a product class. *Checkpoint Sys. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 282 (3d Cir. 2001).  All but the last category of marks are deemed to be inherently distinctive. *Fisons Horticulture, Inc. v. Vigoro Indus.*, 30 F.3d 466, 478 (3d Cir. 1994).

To that end, the Complaint avers, in conclusory fashion, that Plaintiff's Marks are inherently distinctive and that "customers in the food and beverage industry have associated the Javo Trademarks with JBC and its reputation for creating high-quality coffee and coffee-related

goods." *See* D.I. ¶¶ 11, 44-45, 57 ("The Javo Trademarks are inherently distinctive."). Pursuant to

*Twombly*, the Court is not required to accept these legal conclusions as true.

Tellingly, the Complaint is devoid of any factual averments related to the nature, duration,

extent, and/or dollar amount of Plaintiff's advertising, marketing, promotional, or sales efforts in

connection with Plaintiff's Marks other than to blankly declare that it has used the JAVO word

mark for nearly twenty years. *Id.* ¶ 11; *see Sanofi-Aventis v. Advancis Pharm. Corp.*, 453 F. Supp.

2d 834, 850 (D. Del. 2006) ("Commercial strength can be demonstrated by showing extensive

advertising expenditures together with steady sales increases."). This is woefully insufficient to

make out a plausible showing of commercial strength. *See, e.g.*, *A & H Sportswear, Inc.*, 237 F.3d

at 224 (high level of commercial strength where plaintiff spent over $1.2 million on advertising,

received $1.5 million in free publicity, and sales had steadily increased); *Chase Manhattan Bank,*

*USA, N.A. v. Freedom Card, Inc.*, 333 F. Supp. 2d 239, 248 (D. Del. 2004) (finding that lack of

evidence of commercial strength, e.g., "the amount of money that it spent on advertising, whether

it took any steps to increase public recognition of the FREEDOM CARD mark, and whether the

public does, in fact, recognize the FREEDOM CARD mark" strongly indicates that mark is not

strong); *Sanofi-Aventis*, 453 F. Supp. 2d at 850 (finding great commercial strength where plaintiffs'

yearly advertising expenses over a period of 4 years were $651 million, $866 million, $932 million,

and $858 million; their net sales for those years were $5.5 billion, $6.4 billion, $7.3 billion, and

$8.1 billion; and they has been discussed in several large publications, including The New York

Times, U.S. News & World Report, The Washington Post, Time Magazine, and The Economist).

Not only does Plaintiff fail to aver facts from which the Court could reasonably infer that

the JAVO mark is commercially strong, but its obvious failure to do so strongly indicates that the

mark is weak. *See, e.g.*, *Chase Manhattan Bank, USA, N.A.*, 333 F. Supp. 2d at 248. The Complaint

8

is devoid, therefore, of well-plead factual allegations that establish the commercial strength of Plaintiff's JAVO Mark.  Further, amendment of the Complaint would be futile as Plaintiff would be unable to show the magnitude of advertising expenditures and sales needed to establish a commercially strong mark.

With respect to the conceptual strength of Plaintiff's Mark, the pervasive third-party use of JAV-formative marks in the same market and/or industry indicates that Plaintiff's JAVO mark is relatively weak and entitled to limited protection. The wide use of a term within the market at issue is greatly probative of the weakness of the mark.  *See A & H Sportswear, Inc.*, 237 F.3d at 223; *Sun Banks of Florida, Inc. v. Sun Federal Savings & Loan Association*, 651 F.2d 311, 316-17 & n.8 (5th Cir. 1981) (giving special weight to the fact that 25 competing financial institutions used the word SUN in their titles and also noting that over 4,400 Florida businesses in other markets used the term); *Triumph Hosiery Mills, Inc. v. Triumph Int'l Corp.*, 308 F.2d 196, 199 n.2 (2d Cir. 1962) ("The mark 'Triumph' is a so-called weak mark, i.e. it has been used many times to identify many types of products and services."); *Steve's Ice Cream v. Steve's Famous Hot Dogs*, 3 U.S.P.Q.2D (BNA) 1477, 1479 (T.T.A.B. 1987) ("The numerous third-party uses [of STEVE'S] demonstrate that the purchasing public has become conditioned to recognize that many businesses . . . use the term . . . and . . . is able to distinguish between these businesses based on small distinctions among the marks.").

According to USPTO records[3], there are approximately 166 live, federal trademark registrations for JAV-formative marks used in connection with coffee-related goods and/or

---

[3] The Court may take judicial notice of the cited USPTO records. USPTO records evidencing third-party use of JAV-formative marks are central to Plaintiff's claims and are not subject to reasonable dispute because they are capable of accurate and ready determination. *See Roberts v. Gordy*, 2015 WL 12911328, n.3 (S.D. Fla. Sept. 15, 2015) (taking judicial notice of records from the U.S. Patent and Trademark Office); *see also* Fed. R. Evid. 201(b).

9

services in International Class 030. *See* Ex. A. Of these federally registered marks, the vast

majority have disclaimed JAVA as descriptive, with approximately 60 registrations not

disclaiming the term. The conceptual strength of Plaintiff's JAVO Mark, therefore, is relatively

weak in view of the abundance of JAV-formative marks, in the same market and in connection

with the same or similar goods/services, that are used and federally registered. As such, this factor

suggests that Plaintiff's JAVO mark is weak and weighs against a likelihood of confusion. *See,*

*e.g.*, *GOLO, LLC*, 2020 WL 5203601, at *14 ("These facts showing widespread third-party use of

'GO' marks in the health and wellness field demonstrate that 'GO' marks are common, and

therefore, weak."); *Accu Personnel, Inc. v. Accustaff, Inc.*, 823 F. Supp. 1161, 1166 (D. Del. 1993)

(numerous similar marks enable consumers to distinguish "on the basis of minute distinctions").

The strength of Plaintiff's Mark is not merely a factor in the likelihood of confusion

analysis—it is one of the two principal factors that are afforded the greatest weight in said analysis.

And Counts I-V all implicate a likelihood of confusion determination such that the fact that

Plaintiff's Mark is weak impacts every asserted claim.  D.I. 1 ¶¶ 48, 61, 72, 78, 91.

### 2.    *Similarity of the Marks*

Second, the Complaint alleges, also in conclusory fashion, that the Accused JAVY

COFFEE Mark is confusingly similar to Plaintiff's JAVO Mark in sight, sound, meaning, and

commercial impression. D.I. 1 ¶¶ 30, 47, 90.  Although Plaintiff re-avers this legal conclusion

repeatedly throughout the Complaint, it fails to identify the purported meaning of either Plaintiff's

Marks or the Accused Mark, the commercial impression engendered by either Plaintiff's Marks or

the Accused Mark, or the purported similarities in sight or sound between the respective marks.

Again, the Complaint is devoid of factual allegations or support from which the Court can

reasonably ascertain the existence of a likelihood of confusion.  Even a cursory examination of the

Parties' respective marks, however, suggests that the marks are dissimilar as the only overlap in

10

the literal elements of the marks is the JAV- prefix, which is a widely used component of live and registered marks, i.e., there are approximately 166 live, federal trademark registrations for JAV-formative marks used in connection with coffee-related goods and/or services in International Class 030.  *See* Ex. A.

Overlapping prefixes or suffixes, even in the context of similar or related goods/services, rarely form the basis of a likelihood of confusion. *See, e.g.*, *Everett Labs. v. Vertical Pharms.*, 227 Fed. Appx. 124, 129 (3d Cir. 2007) (finding that the -VITE portion of CORVITE and STROVITE "does not give rise to the conclusion that the marks are similar or likely to confuse"); *Tektronix, Inc. v. Daktronics, Inc.*, 187 U.S.P.Q. 588 (T.T.A.B. 1975), aff'd, 534 F.2d 915, 189 U.S.P.Q. (C.C.P.A. 1976) (finding no likelihood of confusion between TEKTRONIX and DAKTRONICS in part because the suffix TRONIX/TRONICS merely indicates that the goods are electronic in nature); *Am. Cyanamid Corp. v. Connaught Labs., Inc.*, 800 F.2d 306 (2d Cir. 1986) (finding no likelihood of confusion between "HibVAX" and "HibIMMUNE" in part because the term "Hib" signified that the respective vaccines at issue were designed to treat haemophilus influenza type b); *Cutter Labs., Inc. v. Air Prods. & Chems., Inc.*, 189 U.S.P.Q. 108 (T.T.A.B. 1975) (finding no likelihood of confusion between STERIFLEX and RESIFLEX in part because the suffix -FLEX is a descriptive term indicating the flexible nature of the product); *Polaroid Corp. v. Oculens, Ltd.*, 196 U.S.P.Q. 836 (T.T.A.B. 1977) (finding no likelihood of confusion between POLAROID and FILTEROID in part because the suffix -OID is a common one indicating "resemblance" or "likeness").

Additionally, the Accused Mark comprises the additional term COFFEE to the terminal end of the mark, which additionally transforms the visual appearance and pronunciation of the Accused Mark from Plaintiff's JAVO Mark as it adds another six letters and two syllables to the

11

Accused Mark. Although the term COFFEE is disclaimed, it must still be afforded proper consideration in the likelihood of confusion analysis. *See Country Floors, Inc. v. Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1065 (3d Cir. 1991) ("The descriptive portions of a mark can be disclaimed, although the entire composite mark, including the descriptive terms, is considered for purposes of infringement."); *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570 (Fed. Cir. 1983) ("[I]t is well settled that the disclaimed material still forms a part of the mark and cannot be ignored in determining likelihood of confusion.").

Given the clear differences in the sound and appearance between Plaintiff's JAVO marks and Defendants' JAVY COFFEE mark, there is no plausible similarity between the marks. *See Ava Enterprises Inc. v. P.A.C. Trading Group, Inc.*, 86 U.S.P.Q.2d 1659, 2008 WL 754201 (T.T.A.B. 2008) (granting motion to dismiss on a judgment on the pleadings where opposer alleged that the applicant's mark PAC BOOSTER THE PERFECT SOUND for audio and video equipment was confusingly similar to opposer's mark BOSS AUDIO SYSTEMS, focusing on BOOSTER versus BOSS.); *Murray*, 86 F.3d at 861 (affirming a Rule 12(b)(6) dismissal because no likelihood of confusion was likely between plaintiff's AMERICA SPEAKS for man-on-the-street video surveys for television commercials of business clients and defendant's AMERICA'S TALKING for talk show programming for cable television.). The Accused Mark consists of two words (whereas Plaintiff's Mark consists of one word), four syllables (whereas Plaintiff's Mark contains two syllables), and ten letters (whereas Plaintiff's Mark contains four letters). The marks are also not used in a manner that engenders a likelihood of confusion. *See* D. I. 1 ¶¶ 12, 26; and below.

**Plaintiff's Marks:**



**The Accused Mark:**



### 3.    *Absence of Actual Confusion*

Third, the Complaint wholly fails to address the actual confusion factor because it does not mention, reference, or identify the existence of any specific instances of actual confusion between the Parties or their respective marks. "[A]bsence of actual confusion is an important factor favoring a finding that no likelihood of confusion exists." *See Noblr, Inc. v. Nobl Ins. LLC*, 2020 WL 1441615, *1, *6 (D. Del. Mar. 24, 2020) (adopting report and recommendation finding that the length of time the mark was used with no confusion [approximately one year] and the lack of actual confusion to date were factors that weighed against a finding of a likelihood of confusion because an opportunity for actual confusion existed but none occurred); *see also Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1362 (11th Cir. 2019) ("If consumers have been exposed to two allegedly similar trademarks in the marketplace for an adequate period of time and no actual confusion is detected either by survey or in actual reported instances of confusion, that can be powerful indication that the junior trademark does not cause a meaningful likelihood of confusion.").

At best, actual confusion is averred in conclusory fashion, which this Court is not bound to accept as true. *See* D.I. 1 ¶ 48; *Twombly*, 550 U.S. at 555. But contrary to any allegations is the fact that the Parties have coexisted for approximately two years in the marketplace without

encountering any actual confusion among consumers. D.I. 1 ¶ 46. In fact, Plaintiff admits not knowing of Defendants' use of the Accused Mark until February 2022—over a year after Defendants began using the Accused Mark.  D.I. 1 ¶ 40. Plaintiff's own lack of knowledge is highly probative and telling of the fact that there is unlikely to be any confusion among consumers, particularly in light of Defendant's public use and Federal registration filing. *See Spark Therapeutics, Inc. v. Bluebird Bio, Inc.*, 2022 WL 605724, *1, *22 (D. Del. Jan. 25, 2022) (finding that the actual confusion factor weighed against a likelihood of confusion because "the fact that bluebird engaged in its campaign for more than a year before ST even learned of the campaign suggests that there is, at most, only a limited risk of confusion in this case."); *Zaletel v. Prisma Labs, Inc.*, C.A. No. 16-1307, 2017 WL 877302, *1, *5 (D. Del. Mar. 6, 2017) ("[T]he lack of actual confusion evidence can lead to an inference that continued use will not lead to consumer confusion.").

Further, the examining attorney who examined the application that matured into the '951 Registration for Defendant did not believe there was a likelihood of confusion between the marks at issue as no Trademark Act, Section 2(d) rejection was issued on the basis of Plaintiff's registered marks (or of any other third-party marks). Accordingly, the Court must give substantial weight to the fact that the Plaintiff failed to, and is unable to, allege actual confusion. The actual confusion factor, therefore, weighs against a likelihood of confusion.

The Accused Mark is federally registered on the Principal Register. D.I. 1 ¶ 36. Federal registration on the Principal Register constitutes *prima facie* evidence of (i) the registration, (ii) validity of the registered mark, (iii) ownership of the mark, and (iv) the exclusive right to use the registered mark in commerce. 15 U.S.C. § 1115(a). The Complaint fails to allege facts that can plausibly rebut the foregoing presumptions because (1) it is laden with conclusory allegations that

the Court is not obligated to accept as true, and (2) a likelihood of confusion is implausible in view of the facts alleged. Said differently, the two marks are so different that even on the face of the Complaint, there is no believable scenario under which confusion would be likely to occur (and, indeed, has not incurred to date). *A & H Sportswear, Inc.*, 237 F.3d at 216 ("Likelihood of confusion has been said to be synonymous with "probable" confusion - it is not sufficient if confusion is merely possible.").

Whether the Court balances the *Lapp* factors or only considers the few well-plead allegations, Plaintiff's allegations are insufficient to support a plausible claim for likelihood of confusion because there would be no likelihood of confusion as a matter of law. The only well-plead allegations made by Plaintiff in the Complaint are those concerning the similarity between the Parties' respective goods, and those similarities are significantly outweighed by the differences in name and other factors such that, as a matter of law, the Court should find no plausible claim of trademark infringement could be made. *See Passport Health, LLC v. Avance Health Sys.*, 823 Fed. Appx. 141, 153 (4th Cir. 2020) (finding "no likelihood of confusion as a matter of law" where only one factor, i.e., the similarity of the services, weighed in plaintiff's favor); *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1361 (11th Cir. 2007) (even though the parties offered similar services and used similar sales and advertising methods, no likelihood of confusion between "WSI" and "WTI" for welding services); *see also Le Book Publ'g, Inc.*, 418 F. Supp. 2d at 307, 311-12 (granting a dismissal of plaintiff's complaint "as a matter of law" because "the 'degree of similarity' element here overwhelms any possibility of confusion" concerning plaintiff's registered mark of LE BOOK NY for books having a directory for professionals and Defendant's unregistered mark of THE BLACK BOOK utilized in connection with books having a directory

for professionals, further stating "[t]he cumulative effects of the dissimilarity of the marks and the form, look and feel of the directories dispels any confusion consumers might have.").

### 4. *Defendants' Intent*

Lastly, Plaintiff failed to properly allege that Defendants' adoption and use of the Accused Mark was done knowingly, willfully, intentionally, and/or in bad faith. D.I. 1 ¶¶ 31, 35, 52, 65, 73, 78. These bare-bones allegations are barren of any factual support, particularly as it relates to Defendants' adoption of the Accused Mark. The Third Circuit has noted that the "'defendant's intent will indicate a likelihood of confusion only if an intent to *confuse* consumers is demonstrated via purposeful manipulation of the junior mark to resemble the senior's.'" *Spark Therapeutics, Inc.*, 2022 WL 605724, *1, *23 (quoting *A & H Sportswear, Inc.*, 237 F.3d at 226). Plaintiff does not aver any such purposeful manipulation and is incapable of doing so because the marks are substantially different in sound, appearance, meaning, and commercial impression. Plaintiff instead claims that Defendants had constructive knowledge of Plaintiff's Marks at the time of adoption and actual knowledge upon receiving Plaintiff's February 4, 2022, cease-and-desist letter. D.I. 1 ¶ 42, 52. This very argument was rejected by the Court in *GOLO, LLC v. Goli Nutrition Inc.*:

> Plaintiff argues that Goli acted in bad faith because it continued to use its mark after Plaintiff demanded that it cease doing so. I do not think this is evidence of bad faith. ***Continuing to use the Goli mark just as equally supports an inference that Defendant disagrees with Plaintiff's infringement analysis. By Plaintiff's logic, if a defendant defends against a trademark lawsuit, that is evidence that the defendant should lose the lawsuit.*** I do not think that makes any sense.

2020 WL 5203601, at *19-*20 (internal citations omitted) (emphasis added); *see Spark Therapeutics, Inc.*, 2022 WL 605724, *1, *24-*25 ("There is no evidence that bluebird has used the word 'spark' as part of an effort to promote confusion or to trade on ST's reputation. Nor do the circumstances suggest any such predatory intent on bluebird's part. . . . Even if bluebird

16

conducted a trademark search, it could reasonably have concluded that it was entitled to use the term 'spark' in the manner that it has. Because there is no evidence in the record that ST failed to conduct an adequate investigation prior to initiating its 'Be the Spark' campaign, bluebird's possible knowledge of ST's SPARK marks does not tip this factor in ST's favor."). Accordingly, neither of Plaintiff's allegations regarding constructive and/or actual notice of Plaintiff's Marks are sufficient to show that Defendants had the intent to promote consumer confusion when they adopted and continued to use the Accused Mark.

In view of the foregoing, Plaintiff failed to state a plausible claim for federal trademark infringement, federal unfair competition, common law trademark infringement and unfair competition, unfair competition under Delaware's Deceptive Trade Practices Act, and cancellation of the '951 Registration, and therefore, the Complaint should be dismissed with prejudice.

And amendment would be futile. "[T]he purpose of Rule 12 is to allow trial courts to terminate lawsuits 'that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Lula v. Network Appliance, Inc.*, 2006 WL 8457121, *1, *3 (W.D. Pa. Aug. 29, 2006) (internal quotations omitted). Because Plaintiff would be unable to cure the pleading deficiencies even if afforded the opportunity to amend, Counts I-V of the Complaint should be dismissed with prejudice.

**B.    Count III Warrants Dismissal Because It Impermissibly Combines Two Discrete Legal Claims Into a Single Count.**

In violation of the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, Count III improperly joins together a claim for common law trademark infringement and a claim for common law unfair competition into a single count, creating a "shotgun" pleading. "As courts throughout the Third Circuit have recognized, 'a shotgun pleading does not give defendants adequate notice of the claims brought against them and the grounds upon which each claim rests.'"

17

*Adger v. Carney*, 2020 WL 1475422, *1, *17 (D. Del. Mar. 26, 2020) (internal quotations omitted); *Digene Corp. v. Ventana Med. Sys.*, 476 F. Supp. 2d 444, 448 n.36 (D. Del. 2007) ("The court notes that [plaintiff's] attempt to bootstrap its allegations concerning tortious interference with business relations into Count IV for civil conspiracy appears similar to a 'shotgun' complaint criticized by the U.S. Court of Appeals for the Eleventh Circuit.").  Shotgun pleadings are disfavored because they fail to comport with Rule 8's requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief" and impermissibly shift the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support onto the defendant and the court. *Talley v. Harper*, 2017 WL 413069, *1 (W.D. Pa. Jan. 31, 2017) ("This is not the job of either a defendant or the Court.").

Count III comprises of claims for both common law trademark infringement and common law unfair competition and avers generally and in conclusory fashion that "Defendants' use of the Javy Mark for marketing, promotion, distribution, offering for sale, and sale of goods (among other things) constitutes trademark infringement and unfair competition under the common law of the State of Delaware." D.I. 1 ¶ 71.  In light of disfavored practice of bootstrapping allegations in support of one claim with another, Plaintiff has nevertheless combined these two claims together, depriving Defendants of fair and adequate notice of the grounds upon which each of these separate and distinct claims rests, thereby requiring dismissal of Count III.

### C.     Under Rule 12(b)(6), Plaintiff Failed to State a Claim for Unjust Enrichment (Count IV).

Plaintiff failed to adequately plead any of the following elements for an unjust enrichment claim under Delaware state law: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law. *See Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 533-34 (D. Del.

2008). Plaintiff avers the first and last elements generally but wholly fails to establish the remaining elements. *See* D.I. 1 ¶¶ 94-96. And, the elements of (2) an impoverishment, (3) a relation between the enrichment and impoverishment, and (4) the absence of justification, are noticeably absent from the Complaint.  In conclusory fashion, Plaintiff alleges that Defendants' use of their federally registered mark has been "to the detriment of JBC" and "at the expense of JBC" but fails to identify, with any degree of specificity, the nature and extent of this purported detriment or any well-plead facts in support thereof. Plaintiff also fails to establish any plausible connection between Defendants' purported enrichment and Plaintiff's purported impoverishment, and further fails to allege the absence of justification regarding Defendants' use of its own, federally registered JAVY COFFEE mark.  Merely stating that "Defendants' conduct constitutes unjust enrichment," without any factual support thereof and without addressing each and every element of the claim, is insufficient to state a plausible claim for unjust enrichment.

Moreover, the elements of the claim that are referenced in the Complaint are merely recited vaguely and generally, e.g., "Defendants have knowingly and willfully received benefits;" "JBC has thus been damaged;" and "there is no adequate remedy at law."  D.I. 1 ¶¶ 94, 96. Said differently, Count VI is merely a recitation of these elements, which is legally insufficient to state a claim. *See, e.g.*, *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 337 (D. Del. 2017) (dismissing unjust enrichment claim where it "allege[d] no facts other than Coats 'obtained and retained money and other value'" and was "too vague to give . . . fair notice of the factual grounds on which the claim rests").  In view of the pleading deficiencies that plague Plaintiff's claim for unjust enrichment, Count VI should be dismissed for Plaintiff's failure to state a claim pursuant to Rule 12(b)(6).

## V. CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court **GRANT** its

Motion to Dismiss the Complaint with prejudice.


Dated: June 14, 2022

                                         **SAUL EWING ARNSTEIN & LEHR, LLP**

OF COUNSEL:                                     */s/ Michelle C. Streifthau-Livizos*

Mark C. Johnson, Esq.                       William E. Manning (#697)

Veronika Balbuzanova, Esq.                James D. Taylor, Jr. (#4009)

JOHNSON | DALAL                           Michelle C. Streifthau-Livizos (#6584)

111 N. Pine Island Road                   1201 North Market Street, Suite 2300

Suite 105                                       Wilmington, DE 19801

Plantation, FL 33324                      (302) 421-6819

Tel: (954) 507-4500                       william.manning@saul.com

Fax: (954) 507-4502                       james.taylor@saul.com

vb@johnsondalal.com                      michelle.streifthau-livizos@saul.com

mj@johnsondalal.com